UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RACHELE M. BUCCIARELLI                    Case No. 15-13900

          Plaintiff,                      Nancy G. Edmunds
v.                                        United States District Judge

WELLS FARGO HOME MORTGAGE, *et al*,       Stephanie Dawkins Davis
                                          United States Magistrate Judge
          Defendants.
_____/

**REPORT AND RECOMMENDATION**
**MOTIONS TO DISMISS/SUMMARY JUDGMENT (Dkt. 23, 30, 45)**

**I.    PROCEDURAL HISTORY**

Plaintiff filed this wrongful foreclosure matter on November 14, 2015.

(Dkt. 1).  On November 18, 2015, District Judge Nancy G. Edmunds issued an

order for plaintiff to show cause why her complaint should not be dismissed for

lack of subject matter jurisdiction.  (Dkt. 5).  In response, plaintiff filed an

amended complaint on December 1, 2015.  (Dkt. 6).  Judge Edmunds vacated the

order to show cause, deeming it satisfied.  (Dkt. 8).  However, Judge Edmunds

also determined, after screening plaintiff's amended complaint under 28 U.S.C.

§ 1915, that two defendants, who were Michigan corporations, had to be dismissed

because their presence in this lawsuit destroyed diversity and plaintiff's amended

complaint is "premised exclusively under Michigan law ... ."  (Dkt. 9, Pg ID 76-

1

77).  As the moving parties have observed, it is difficult to discern the precise causes of action plaintiff alleges in the amended complaint.  Thus, defendants have identified and attempted to defeat a multitude of state and federal theories.  However, based on Judge Edmunds' previously-stated conclusion that plaintiff's amended complaint is premised solely on Michigan law, the undersigned will not further address any arguments raised by the parties relating to any possible federal causes of action.

Defendants Wells Fargo Home Mortgage, Wells Fargo Institutional Retirement and Trust and Wachovia Bank (Wells Fargo defendants) filed their motion to dismiss or for summary judgment on March 23, 2016.  (Dkt. 23).  Plaintiff filed a response and the Wells Fargo defendants filed a reply.  (Dkt. 27, 29).  On May 24, 2016, defendant Selene Finance LP filed a motion for summary judgment or for dismissal of plaintiff's claims under Rule 12(c).  (Dkt. 30).  Plaintiff filed a response and Selene filed a reply.  (Dkt. 33, 34).  Defendant Bank of America filed a motion to dismiss on December 2, 2016.  (Dkt. 45).  Plaintiff has not yet filed a response to this motion.[1]  On January 13, 2017, this matter was referred to the undersigned for all pretrial proceedings.  (Dkt. 47).

---

[1]  As discussed in this Report and Recommendation, plaintiff's state law claims fail as a matter of law.  Thus, the undersigned recommends that plaintiff's complaint be dismissed in its entirety, including those claims against Bank of America, as successor to Countywide Home Loans Servicing.

2

For the reasons set forth below, the undersigned **RECOMMENDS** that defendants' motions be **GRANTED** and that plaintiff's complaint be dismissed in its entirety.

## II.    FACTUAL BACKGROUND

In the amended complaint (Dkt. 6, ¶ 10), plaintiff alleges that she holds four different mortgage loans with Wells Fargo concerning the following properties in Taylor, Michigan:

1.    6567 Westpoint: On July 25, 2006, plaintiff obtained a loan for $113,600 and encumbered the property with a Mortgage given to Wells Fargo. (Dkt. 23, Ex. A). However, on February 20, 2015, this mortgage was discharged. (Dkt. 23, Ex. B).

2.    6568 Westpoint: On August 18, 2006, plaintiff obtained a $52,000 loan and encumbered the property with a mortgage given to Wells Fargo. (Dkt. 23, Ex. C). On September 21, 2015, this loan and mortgage were assigned to Wilmington Savings Fund Society, FSB, doing Business as Christiana Trust as trustee for BCAT 2015-13ATT. (Dkt. 23, Ex. D). Plaintiff defaulted on this loan, the mortgage was foreclosed and the property was sold at a sheriff's sale on November 5, 2015. (Dkt. 23, Ex. E). The redemption period expired on May 5, 2016. *Id*. Defendant Selene was the servicer of this mortgage. (Dkt.

3

30, Ex. B).

3.    6608 Westpoint: On August 28, 2006 plaintiff obtained a $113,600

loan and encumbered the property with a mortgage given to Wells

Fargo.  (Dkt. 23, Ex. F).  On  September 21, 2015, this loan and

mortgage were assigned to Wilmington Savings Fund Society, FSB,

doing Business as Christiana Trust as trustee for BCAT 2015-13ATT.

(Dkt. 23, Ex. G).  Plaintiff defaulted on this loan, the mortgage was

foreclosed and the property was sold at a sheriff's sale on December

17, 2015.  (Dkt. 23, Ex. H).  The redemption period expired on June

17, 2016.  *Id*.  Defendant Selene was the servicer of this mortgage.

(Dkt. 30, Ex. C).

4.    6607 Westpoint:  On July 25, 2006 plaintiff obtained a loan for

$139,500 from Wells Fargo.  To secure repayment of this loan,

plaintiff gave mortgage encumbering the property.  (Dkt. 23, Ex. I).

Plaintiff defaulted on this loan, the mortgage was foreclosed and the

property was sold at a sheriff's sale on February 18, 2016.  (Dkt. 23,

Ex. J).  The redemption period expired on August 18, 2016.  *Id*.

Plaintiff alleges that beginning in or about 2009 and through 2015, she

"fell on hard times." (Dkt. 6, ¶ 11).  She contends that defendants made those

times "even harder" by "applying and reapplying their loan payments and charging

4

all types of extra miscellaneous and unjust fees." *Id*.  Plaintiff also contends that

Wells Fargo allowed employees or agents to drive by her properties and "advised

her tenants that the Plaintiff had fallen behind, which ultimately and therefore

caused her tenants to stop paying rent." *Id*.   Next plaintiff alleges that Wells

Fargo called "sometimes ten (10) times a day regularly every day, seven (7) days a

weeks on both her home phone and mobile phone and harassed her with their

threats and unlawful mortgage practices, as well as having men wait by her house

to confront her at her home, gate and vehicle, scaring the Plaintiff regularly." *Id*.

at ¶ 12.

In paragraph 13 of the amended complaint plaintiff appears to be alleging

that Wells Fargo told her that her loan defaults would be worked out after she

returned unspecified documentation.  She claims that after returning the

paperwork "all her loans were denied for various reasons." *Id*.  Plaintiff also

alleges that Wells Fargo's actions caused her "great harm, emotional and physical

strain, depression, anxiety, mental anguish and financial hardship, loss of appetite,

sickness and ultimately caused her to lose her job at Motor City Casino." *Id*. at ¶

18.

Plaintiff also alleges that as early as 2013 the amount claimed to be due on

her loans was incorrect and she seems to be contesting the addition of attorney

fees to at least one loan.  *Id*. ¶ 21.  Defendants point out that the public records

5

show that in 2013 the mortgage encumbering 6567 Westpoint was foreclosed. (Dkt. 23, Ex. J). However, the resulting sheriff's deed was later expunged, (Dkt. 23, Ex. K) and the mortgage discharged. (Dkt. 23, Ex. B).

In paragraph 22 of the amended complaint, plaintiff appears to be arguing that a foreclosure notice was not properly posted, but plaintiff does not identify which property she is referring to. According to defendants, from the date referenced, November 4, 2015, plaintiff could be referring to either 6568 Westpoint or 6608 Westpoint. Similarly, in paragraphs 23 and 26, plaintiff contends that Wells Fargo's foreclosure counsel failed to properly notify her of a foreclosure sale. However, the Trott law firm handled the foreclosures for both 6568 Westpoint and 6608 Westpoint so it is not clear to which property plaintiff is referring.

In paragraph 28, plaintiff mentions Wachovia Bank, which she says held her funds according to what she was told by Wells Fargo representatives. Similarly, in paragraph 29 of the amended complaint, plaintiff mentions Wells Fargo Institutional Retirement and Trust. She alleges that at some point she demanded to be paid $50,000 out of a 401(k) and the money was not released immediately, but that eventually it was paid to her. Defendants point out that there is no other mention of Wells Fargo Institutional Retirement and Trust in the amended complaint.

6

Plaintiff contends that defendants were negligent in their violation of their "duty to the plaintiff to design a mortgage assistance program that would work for everyone," as it related to:

1.  The modification of her mortgages.  (Dkt. 6, ¶ 32 a, b, d, h, j, k and p);

2.  The failure "to adjust unnecessary fees and costs." (Dkt. 6, ¶ 32 c);

3.  The failure to warn plaintiff that her loans could go into foreclosure during the modification process.  (Dkt. 6, ¶ 32 e and l);

4.  The failure to stop all foreclosures when mistakes were known in the calculation of amounts due and in miscalculating the amounts due on the loans. (Dkt. 6, ¶ 32 f, m and n); and

5.  The failure to provide the required foreclosure notices.  (Dkt. 6,  ¶ 32 g, i and o).

In paragraph 34 of the amended complaint, plaintiff alleges that her rights under Mich. Comp. Laws §§ 600.3205a and 600.3205c were violated.  Defendants point out, however, that these statutes were repealed effective June 30, 2013. Finally, in paragraph 43 of the amended complaint, labeled as "Count II (Implied Warranty)" plaintiff contends that she was "impliedly warranted that her mortgage loans were of quality and could be adjusted to meet the surrounding areas as allowed by the new Obama assistance programs, etc. and that said assistance was

fit for the Plaintiff and never implemented."

## III.  ANALYSIS AND CONCLUSION

### A.  <u>Standard of Review</u>

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first comply with Rule 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007), quoting, *Twombly,* 550 U.S. at 555 (citations and internal quotation marks omitted). And, while a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.,* quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (The factual allegations in a complaint need not be detailed but they "must do more than create speculation or

8

suspicion of a legally cognizable cause of action; they must show *entitlement* to relief.").

"[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Thus, it is permissible to consider, in the context of a motion to dismiss, documents such as those relating to the mortgage transaction, assignment, and foreclosure because they are referenced in plaintiffs' complaint and are central to their claims. *Allen v. International Truck & Engine Corp.*, 2010 WL 749655, *2 (S.D. Ohio 2010); *see also Havenick v. Network Exp., Inc.*, 981 F.Supp. 480 (E.D. Mich. 1997) ("[T]he Court may properly consider, for the purposes of a Motion under Fed.R.Civ.P. 12(b)(6), the entirety of documents which Plaintiffs rely upon and quote in their Complaint without transforming the Motion into one for Summary Judgment."); *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is referred to in the complaint and is central to the plaintiff's claim ..., the defendant may submit an authentic copy to the court to be considered on a motion to dismiss."); *Crofton v. Bank of America Home Loans*, 2011 WL 1298747, *3 (E.D. Mich. 2011) (A court may also consider "matters of public record," such as

9

documents recorded with the Register of Deeds when considering a motion to dismiss under Rule 12(b)(6)); *Bundy v. Federal Nat. Mort. Ass'n.*, 2011 WL 977531, *2 (E.D. Mich. 2011) (Given that the "the loan applications, mortgages, and notes attached to defendants' motion" were referred to in the complaint and were central to plaintiff's claims, they "are considered part of the pleadings, and the Court's consideration of these documents does not convert a motion to dismiss into one for summary judgment."). Based on the foregoing, the undersigned need only address the motions to dismiss and need not undertake any analysis of the motions for summary judgment posed in the alternative by defendants.

In diversity cases, this Court is required to apply state law in accordance with the controlling decisions of the Michigan Supreme Court. *NAS Sur Group v Cooper Ins. Ctr.*, *Inc.*, 617 F.Supp.2d 581 (W.D. Mich. 2007); *Erie R R Co. v. Tompkins*, 304 U.S. 64 (1938); *Bailey Farms, Inc v. NOR-AM Chem Co.*, 27 F3d 188, 191 (6th Cir. 1994). If the state Supreme Court has not yet addressed the issue presented, this Court must predict how it would rule, by looking to "all available data," including state appellate decisions. *Safeco Ins. Co. of Am. v. CPI Plastics Group, Ltd.*, 625 F.Supp.2d 508 (E.D. Mich. 2008); *Kingsley Associates, Inc.v. Moll Plastic Crafters*, *Inc*, 65 F.3d 498, 507 (6th Cir. 2000).

10

B.    <u>Wrongful Foreclosure</u>[2]

As Selene points out, the redemption period for the two mortgages it services (6568 Westpoint and 6608 Westpoint), has now expired.[3]  In addition, the redemption period for 6607 Westpoint[4] expired on August 18, 2016.  Thus, to the extent plaintiff failed to redeem all of the properties at issue, there would be no basis to set aside any sheriff's sale because the redemption periods have expired. It is well-settled under Michigan law that a former property owner loses all right, title, and interest in a property once the redemption period for that property expires following a foreclosure sale.  "Once the redemption period expired, all of plaintiff's rights in and title to the property [are] extinguished."  *Overton v. Mortgage Electronic Registration Systems*, 2009 WL 1507342, at *1 (Mich. App. 2009).  Moreover, the filing of a lawsuit before the redemption deadline does not toll the redemption period.  *Id.* at *1 ("Although he filed his suit before the redemption period expired, that was insufficient to toll the redemption period."). The Michigan Court of Appeals recently reaffirmed this rule when it held that "by failing to redeem the property within the applicable time, plaintiff lost standing to

---

[2] Given the similarity in arguments posed by the moving defendants, the Court will address them as a group, rather than separately, in the interests of efficiency and brevity.

[3] At the time Selene filed its motion for summary judgment, the redemption period for 6608 Westpoint had not yet passed, but the time has now expired.

[4] It is not clear whether plaintiff redeemed this property.  She appears to still be living at this address, based on the address on file with the Court in this case.

bring her claim." *Bryan v. JP Morgan Chase Bank*, 304 Mich. App. 708, 715 (2014). This means a former owner is precluded from challenging a foreclosure sale after the redemption period.

It is not clear on this record whether plaintiff redeemed any of the properties at issue. It appears that, at a minimum, plaintiff did not exercise her redemption rights as to two of the three properties, and the redemption periods have expired for all of the properties at issue.[5] Since the redemption periods have expired, plaintiff must show that she was prejudiced by the alleged failure to follow the foreclosure by advertisement statute. "To demonstrate such prejudice, they must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115-116 (2012). In a recent Michigan Court of Appeals decision referencing *Kim*, the Court specifically identified "three essential aspects" a mortgagor must allege to support a claim to challenge a foreclosure by advertisement: "(1) fraud or irregularity in the foreclosure procedure; (2) prejudice to the mortgagor; and (3) a causal relationship between the alleged fraud or irregularity and the alleged prejudice, i.e., that the mortgagor would have been in a *better position to preserve the property interest absent the fraud or irregularity*."

---

[5] As to 6567 Westpoint, the mortgage was discharged. Thus, this property appears to not be at issue.

*Diem v. Sallie Mae Home Loans, Inc.*, 307 Mich. App. 204, 210-11 (2014).  A

mortgagor generally has six months after the date of the sheriff's sale to redeem

his property.  Mich. Comp. Laws § 600.3240(8).  After that point (or whatever

redemption period applies), the mortgagor's "right, title, and interest in and to the

property" are extinguished.  *Piotrowski v. State Land Office Bd.*, 302 Mich. 179,

187 (1942); *Conlin v. Mortgage Elec. Registration Sys.*, 714 F.3d 355, 359 (6th

Cir. 2013); Mich. Comp. Laws § 600.3236.  Michigan courts have held that once

the redemption period expires, a property owner may challenge a foreclosure sale

only by making "a clear showing of fraud, or irregularity."  *Schulthies v. Barron*,

16 Mich. App. 246, 248 (1969).  Additionally, the stated fraud or irregularity

"must relate to the foreclosure procedure itself."  *El-Seblani v. Indymac Mortg.*

*Services*, 510 Fed.Appx. 425, 429 (6th Cir. 2013).  This standard is a high one.

*Conlin*, 714 F.3d at 360.  "The Michigan Supreme Court has held that it would

require a strong case of fraud or irregularity, or some peculiar exigency, to warrant

setting a foreclosure sale aside" after the redemption period expires.  *Sweet Air*

*Inv., Inc. v. Kenney*, 275 Mich. App. 492, 497 (2007) (quoting *United States v.*

*Garno*, 974 F.Supp. 628, 633 (E.D. Mich. 1997)) (citing *Detroit Trust Co. v.*

*Agozzinio*, 280 Mich. 402, 405-06 (1937) and *Calaveras Timber Co. v. Michigan*

*Trust Co.*, 278 Mich. 445, 450 (1936)).

   As the Sixth Circuit recently stated, "[w]hether the failure to make this

13

showing is best classified as a standing issue or as a merits determination, one

thing is clear: a plaintiff-mortgagor must meet this 'high standard' in order to have

a foreclosure set aside after the lapse of the statutory redemption period." *Conlin*,

714 F.3d at 359-60.  Here, there is no question that any applicable redemption

periods have expired.  *See* notes 1 and 2, *supra*.  Thus, to the extent plaintiffs'

amended complaint seeks to challenge any portion of the foreclosure proceeding

after the expiration of the redemption period, she can only do so by making a

strong showing of fraud or irregularity.  None of the allegations in her amended

complaint meet this standard, as discussed below.

In Count I, plaintiff appears to be claiming that Wells Fargo miscalculated

the amount owed.  (Dkt. 6, ¶¶ 11, 21, 25, 32(c)).  She also claims that Selene failed

to make sure that all of Wells Fargo's facts and figures were correct.  (Dkt. 33, Pg

ID 627).  Defendants assert that plaintiff does not allege how Wells Fargo

improperly calculated any amount claimed to be owed, as to which property

mistakes were made, how those amounts should have been calculated, or even

what the proper amounts should have been.  They also point out that many courts

in this district have found under similar circumstances that such conclusory

allegations lack a sufficient factual basis to state a plausible claim for relief.  *See*

*e.g.*, *Caggins v. Bank of N.Y. Mellon*, 2015 WL 4041350, *2 (E.D. Mich. July 1,

2015) (Steeh, J.) ("Plaintiff alleges that Defendants violated the Michigan

14

foreclosure statute by failing 'to properly calculate the amount claimed to be due on the date of the notice of foreclosure.'...  The Plaintiff does not plead any facts as to why she believes the amount stated in the foreclosure notice was miscalculated, how the amount was miscalculated, or what the correct amount should have been....  Plaintiffs pleading is merely a conclusory allegation without factual support, which does not meet Rule 12(b)(6)'s pleading requirements."); *Fredericks v. Mortg. Elec. Reg. Sys*., 2015 WL 3473972, *4 (E.D. Mich. June 2, 2015) (Borman, J.) ("Plaintiffs allege ... that Defendants failed to follow the procedures set forth in Mich. Comp. Laws § 600.3201 *et seq*. 'by failing to properly calculate the amount claimed to be due on the date of the notice of foreclosure.'... This one-paragraph Count fails to plausibly suggest a claim."); *Fredericks v. Allquest Home Mortg. Corp*., 2015 WL 1966856, *3 (E.D. Mich. Apr. 30, 2015) (Edmunds, J.) ("Plaintiff alleges that Defendants failed to properly calculate the amount claimed to be due on the date of the notice of foreclosure in violation of Mich. Comp. Laws § 600.3212(c).  From a pleading perspective, this claim falls short of the mark.  Plaintiff fails to assert basic elements of her claim, including what she believed the correct amount due to be. Plaintiff has made no factual allegation beyond stating that the amount due was inaccurate.").  In response, plaintiff says that "proof of the miscalculations will be provided at the time of discovery."  (Dkt. 27, Pg ID 314).  Plaintiff also points to news stories and

an unidentified legal opinion from a bankruptcy court that Wells Fargo had made costly accounting errors in the administrations of many home loans. (Dkt. 27, Pg ID 347-48). In the view of the undersigned, defendants correctly point out that bare allegations regarding "miscalculations" are insufficient to sustain a claim of wrongful foreclosure and this claim must be dismissed. *See Fredericks v. Allquest*, at *3.

In addition, in paragraph 22 of the amended complaint, plaintiff appears to be challenging the foreclosure by alleging improper notice under Mich. Comp. Laws § 600.3208 ("they are scheduling foreclosures without notifying her of any such sale or date on two and maybe three of her properties.... Wells Fargo associates and/or agents, 'state they posted the notice on the rental home', to which the tenants that reside in this property state 'they never receive'"). Here, plaintiff has four different properties and each was the subject of a separate foreclosure. Without identifying which property was the subject of a defective foreclosure notice, defendants say it is impossible for them to respond to such an allegation. And, to establish prejudice under *Kim*, a plaintiff would need to "show that [she] would have been in a better position to preserve [her] interest in the property absent defendant's noncompliance with the statute." *Id*. at 116. Defendants contend that plaintiff's only alleged statutory defect is the suggestion that one or more of the properties were not posted with a foreclosure notice under

16

Mich. Comp. Laws § 600.3208.  According to defendants, even if true, plaintiff has not pleaded any facts to show that differing sale dates actually prejudiced her. Stated differently, plaintiff fails to explain how she would have been in a better position to preserve her interest in any of the properties by anything different being in the notices provided.  In particular, defendants argue that plaintiff has not alleged that she intended to bid at the sale and was precluded from doing so. Moreover, defendants assert that plaintiff has not pleaded facts to show that she possessed the funds needed to bid at a sale or that she had the funds to redeem any of the properties.

The Court notes that plaintiff does not really explain in her response briefs how the foreclosure process violated Michigan law under the foreclosure by advertisement statute.  To the extent that plaintiff claims that the required notices were not provided, those bare allegations are not sufficient as recently explained by Judge Borman in *Radske v. Federal National Mortgage Ass'n*, 2016 WL 3667957, *3 (E.D. Mich. 2016).  In *Radske*, the plaintiff alleged that the defendants failed to provide the proper statutory notices because he "did not see" or "never saw" the published notices or the notice posted on the Property.  Yet, as Judge Borman pointed out, "[t]hese claims are belied by the affidavits attached to the Sheriff's Deed which provide that the notice of foreclosure was properly published for four weeks ... and posted on the Property on March 27, 2015."  *Id.*

17

Similarly, defendants in this case have provided evidence, including three separate affidavits, evidencing posting and publication on the three properties at issue. (Dkt. 23-6 (6568 Westpoint); Dkt. 23-9 (6608 Westpoint); Dkt. 23-11 (6607 Westpoint)).  Judge Borman explained that such affidavits are "presumptive evidence" that the notices were provided.  *Radske*, at *3 (quoting Mich. Comp. Laws § 600.3264); *see also Garrow v. JPMorgan Chase Bank, N.A.*, 2016 WL 2894066, at *4 (E.D. Mich. Apr. 27, 2016), *report and recommendation adopted*, 2016 WL 2866410 (E.D. Mich. May 17, 2016).  Thus, just as in *Radske*, any claim that plaintiff did not see the posted notices of sale or the publications does not create a plausible claim of wrongful foreclosure pursuant to § 600.3201.  *Radske*, at *3, (citing *Derbabian v. Bank of Am., N.A.*, 587 Fed.Appx. 949, 956 (6th Cir. 2014) (holding that the bare assertion that the defendant failed to give "required notices" did not meet the pleading standards of Fed.R.Civ.P. 8, and "[m]ore importantly, the sheriff's deed reflecting the foreclosure sale shows that the [plaintiffs] were given the statutorily required notices.")).  Thus, this claim is barred for the same reasons set forth in *Radske*.[6]

### D.   Negligence/Tort Damages

Throughout Count I of the amended complaint, plaintiff accuses defendants

---

[6] Any other claimed defects appear to be premised on federal law, which, as the undersigned has observed, Judge Edmunds has already determined are not presented in the amended complaint.

18

of acting negligently either in foreclosing the respective mortgages or in the treatment of her loan modification requests.  According to defendants, this claim fails under the well-established rule precluding a tort remedy when the parties' relationship is governed by a contract.  *See Sherman v. SeaRay Boats, Inc.*, 251 Mich. App. 41, 50 (2002) ("an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established."); *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1134 (6th Cir. 1995) ("Michigan law is well-settled that an action in tort requires a breach of duty separate and distinct from a breach of contract.").  Defendants maintain that plaintiff does not and cannot point to a legal duty that exists independently of the parties' contractual relationship.  In response, plaintiff points to a variety of federal laws, regulations and rules, but does not explain how these support a claim for negligence under state law.  (Dkt. 27, Pg ID 314-15).

As explained in *Zwerican v. Pennymac Loan Servs.*, 2017 WL 780692, at *5 (E.D. Mich. Feb. 9, 2017), *report and recommendation adopted sub nom.*, 2017 WL 767382 (E.D. Mich. Feb. 28, 2017), although "violations of regulations may provide evidence of negligence," a plaintiff must nevertheless direct the court to such regulations and "establish that [they] imposed a duty on the lender that was owed to the borrower."  *Id.* (quoting *McKerracher v. Green Tree Servicing*, 2015

19

WL 9942621, at *7 (W.D. Mich. Dec. 17, 2015)).  However, where, as here,

parties have a contract such as a mortgage agreement, a tort claim does not arise

unless the duty breached exists "independent from the contractual obligations of

the breaching party." *Zwerican*, at *5 (quoting *McKerracher*, at *6).  Just as in

*Zwerican*, plaintiff here makes no allegation that some duty independent of the

mortgage contract was breached by any defendant. *Id*. (citing *Kemp v. Resurgent

Capital Services*, 2013 WL 5707797, at *9 (E.D. Mich. Oct. 21, 2013) ("Under

Michigan law, a party is barred from recovering economic losses in tort, where the

losses were suffered because of a breach of duty assumed only by contract."); *Gen.

Motors v. Alumi-Bunk, Inc*., 482 Mich. 1080 (2008).  Thus, the undersigned finds

no legal support for plaintiff's independent claim for damages for negligence

given that the parties' relationship is governed by contract.  And, as set forth

above, it has already been determined that plaintiff's amended complaint is

premised solely on state law, so plaintiff cannot rely on any alleged violation of

federal law to buttress a negligence claim.

C.    Fraudulent Misrepresentation

In Count II, plaintiff claims that defendants breached an implied warranty

that her loans could be "adjusted," and that she "relied upon such promises and

assistance programs for the modifications that she was offered."  (Dkt. 6,  ¶ 44).

Defendants contend that this misrepresentation claim fails as a matter of law.

Under Michigan law, a claim of fraud requires:

> (1) That defendant made a material misrepresentation;
> (2) that it was false; (3) that when he made it he knew
> that it was false, or made it recklessly, without any
> knowledge of its truth, and as a positive assertion; (4)
> that he made it with the intention that it should be acted
> upon by plaintiff; (5) that plaintiff acted in reliance upon
> it; and (6) that he thereby suffered injury. Each of these
> facts must be proved with a reasonable degree of
> certainty, and all of them must be found to exist; the
> absence of any one of them is fatal to recovery.

*Hi-Way Motor Co v. Int'l Harvester Co*, 398 Mich. 330, 336 (1976).  Defendants

argue that plaintiff's fraud claim is not stated with any particularity.  Defendants

also argue that plaintiff's general allegations of misrepresentation concern future

conduct about the possibility of a modification, which cannot form the basis of a

fraud claim.  *See Forge v. Smith*, 458 Mich. 198, 212 (1998) ("A promise

regarding the future cannot form the basis of a misrepresentation claim").

Furthermore, if plaintiff has a plausible basis for alleging that defendants failed to

live up to these alleged commitments, the proper remedy lies in contract—not

fraud.  "[I]n a contractual setting, a tort action must rest on a breach of duty

distinct from the contract . . . ."  *Siecinski v. First State Bank of East Detroit*, 209

Mich App 459, 465 (1995).  Michigan law bars a plaintiff from recovering in tort

for alleged breaches of a duty assumed only by contract.  *See Fultz v. Union

Commerce-Assoc.*, 470 Mich. 460, 467 (2004).  In this case, the mortgage contract

defines the rights and obligations of the parties.  Thus, defendants contend that plaintiff does not have a basis to assert a tort claim in light of the contractual relationship.

Defendants also point out that the statute of frauds requires that agreements with financial institutions be in writing and signed before they can be enforced. Mich. Comp. Laws § 566.132; *see also*, *Hart v. Countrywide Home Loans, Inc*., 735 F.Supp.2d 741, 749 (E.D. Mich. 2010) ("Defendant's alleged statement [that it would review plaintiff's mortgage for modification] would be a promise to conduct a review in the future and cannot give rise to a viable misrepresentation claim.").  According to defendants, since plaintiff does not allege that there is an agreement in writing and signed with an authorized signature relating to any purported promise to modify the loan or forbear (other than the forbearance agreement they admittedly defaulted under), plaintiff's fraud claim fails.

Defendants next argue that plaintiff cannot show reasonable reliance.  Here, plaintiff seems to be arguing that she was somehow led to believe that no foreclosure sale would take place during a modification review.  (Dkt. 6, ¶ 32(e)). However, the Mortgages expressly state that if plaintiff defaults the "Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law."  (Dkt. 23, Exs. A, C, F & I at ¶ 22).

22

According to defendants, plaintiff signed these terms and she knew that failing to timely repay her loans could result in foreclosure and the loss of her properties. Thus, purported reliance on alleged oral statements regarding the foreclosure process which were contrary to the terms of the Mortgages was unreasonable and cannot form the basis for an intentional fraud claim.

In response, plaintiff mentions a host of investigations and fraud claims made against Wells Fargo and misconduct in the mortgage industry generally. Plaintiff also seems to suggest that the Fair Debt Collection Practices Act and other consumer protection laws are designed to prevent businesses from engaging in fraud. Plaintiff also points out that Wells Fargo has already admitted to fraud as it relates to mortgage loans when they settled a large mortgage fraud lawsuit. (Dkt. 27, Pg ID 327). Plaintiff also contends that she has not violated Rule 9(b) because defendants have sufficient notice of her claims. (Dkt. 27, Pg ID 331).

As an initial matter, the undersigned concludes that plaintiff has failed to plead facts sufficient to support a claim of fraud. The undersigned agrees with Judge Goldsmith's analysis of a similar fraud claim in *Mrla v. Fed. Natn'l Mort. Assoc.*, 2016 WL 3924112 (E.D. Mich. 2016), which is equally applicable here. The *Mrla* opinion first observes that, although state law controls the elements of a common-law fraud claim, the Federal Rules of Procedure still dictate whether a fraud claim was sufficiently pleaded in federal court. *Id*. *8 (citing *Thomas v.

23

*Publishers Clearing House, Inc.*, 29 Fed.Appx. 319, 323 (6th Cir. 2002)).  To

satisfy Rule 9(b)'s particularity requirement, which governs fraud claims, a

plaintiff "must provide sufficient details regarding the time, place and content" of

the allegedly fraudulent statement.  *Id*. (quoting *U.S. ex rel. SNAPP, Inc. v. Ford

Motor Co*., 532 F.3d 496, 505 (6th Cir. 2008)).  In *Mrla,* under facts similar to

those alleged here, the court concluded that the plaintiff's complaint failed to meet

Rule 9(b)'s pleading threshold.  While the plaintiff in *Mrla* claimed that the

defendants represented to her that they would not begin foreclosure proceedings

while the parties actively pursued loan modification, the plaintiff failed to provide

"any details regarding the time or place of the statements or otherwise point to any

particular statement."  *Id*.  Likewise, the court in *Radske, supra,* reached a similar

conclusion, based on a claim nearly identical to that in the present case and in

*Mrla*:

> This single, vague allegation regarding the alleged
> fraudulent misrepresentation does not meet the exacting
> pleading requirement of Rule 9(b). Plaintiff does not
> specify the time, the place, or exact contents of the
> statement, nor does Plaintiff allege any facts from which
> it could be concluded that his reliance was reasonable.
> Thus, Plaintiff has failed to plausibly allege a claim of
> fraudulent misrepresentation and the claim will be
> dismissed.

*Radske*, at *6.  Plaintiff's amended complaint here suffers from the same defects

noted in both *Mrla* and  *Radske*—it too fails to meet the particularity requirements

to state a fraud claim.  Thus, the undersigned recommends that plaintiff's fraud claim against all defendants be dismissed.

To the extent that plaintiff makes any claims based on alleged oral promises or warranties, those claims are barred by the statute of frauds, as explained in *Gallagher v. BAC Home Loans Servicing*, 2012 WL 1952349, *14 (W.D. Mich. 2012), where Judge Quist explained that, to the extent the plaintiffs were attempting to enforce an oral promise not contained in the parties' written agreement, their claim is barred by the statute of frauds.  *Id.* (citing Mich. Comp. Laws § 566.132(2); *Crown Tech. Park v. D & N Bank, FSB*, 242 Mich. App. 538, 550 (2000) (stating that the statute of frauds applies to any claim seeking to enforce an oral promise against a financial institution, regardless of its label)).  Thus, to the extent any such claim has been asserted, it fails as a matter of law under the statute of frauds.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions be **GRANTED** and that plaintiff's amended complaint be dismissed in its entirety.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and E.D. Mich. Local

Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2); E.D. Mich. Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: March 3, 2017                     s/Stephanie Dawkins Davis
                                        Stephanie Dawkins Davis
                                        United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I certify that on <u>March 3, 2017</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and electronic notification to the pro-se e-filer.

<div style="margin-left:auto">

<u>s/Durene Worth</u>
Acting in the absence of
Tammy Hallwood, Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov

</div>